**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| WILLIE RAY ET AL., § | |
|     Plaintiffs, § | |
| § | |
| v. § | CIVIL ACTION NO. 2-06-CV-385 (TJW) |
| § | |
| STATE OF TEXAS, ET AL., § | |
|     Defendants. § | |
| § | |

**MEMORANDUM OPINION AND ORDER**

**1.   Introduction**

A Texas statute makes it a criminal offense for any person to sign as a witness for more than one early voting ballot application, subject to limited exceptions.[1] The question presented in this case is whether the Texas law is consistent with the First and Fourteenth Amendments and Section 208 of the Voting Rights Act. For the reasons assigned in this opinion, the court concludes that the statute is constitutional and does not impermissibly conflict with the Voting Rights Act. The plaintiffs' motion for summary judgment (#75) is denied and the defendants' motion for summary judgment (#67) is granted in part and denied in part. The court declines to grant all the declaratory relief the defendants seek and grants the defendants' motion only to the extent necessary to deny all of the plaintiffs' claims for relief.

**2.   Background and Procedural Posture**

Title 7 of the Texas Election Code establishes the statutory scheme for early voting. A voter may participate in early voting either by mail or in-person. *See* TEXAS ELEC. CODE § 84.001(a). If general voter eligibility requirements are met, a voter may vote early by mail if: (a) the voter expects

---

[1]   Tex. Elec. Code § 84.004.

to be absent from the country of the voter's residence on election day and during the regular hours for conducting early voting at the main early voting polling place; (b) the voter has a disability that prevents the voter from appearing at the polling place on election day; (c) the voter is 65 years old or older on election day; or (d) the voter is confined in jail on election day. *See id.* at §§ 81.001-81.004. The plaintiffs' claims in this case relate to provisions (b) and (c).

To be entitled to vote early by mail, an eligible voter must apply for an early voting ballot. In circumstances where a person by reason of disability or illiteracy cannot sign an application, then another person may sign as a witness. If a witness signs the application, then the application must indicate the witness's relationship to the applicant, or, if unrelated, indicate that fact. *See id.* at § 84.001(a).

If an applicant for early voting by mail satisfies the statutory requirements, the early voting clerk will mail that person the ballot material. *See id.* at § 86.001(b); § 86.003(a). After receiving the ballot material, the voter must mark the ballot in accordance with the instructions on the ballot envelope. *See id.* at § 86.005(a). The voter must then place the ballot in the official ballot envelope, seal the envelope, place the ballot envelope in the official carrier envelope, seal the carrier envelope, and sign the certificate on the carrier envelope. *See id.* at § 86.005(c).

If the voter needs help in preparing the ballot, he or she may select an authorized person to provide such assistance. *See id.* at § 86.010(a). Any person other than the voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs may assist the voter. *See* TEX. ELEC. CODE § 64.032(c). This assistance may include: (a) reading the ballot to the voter; (b) directing the voter to read the ballot; (c) marking the voter's ballot; or (d) directing the voter to mark the ballot. *See id.* at § 64.032.

Shortly before the November 2006 elections, the plaintiffs filed this suit challenging various sections of the Texas Election Code applicable to early voting. The court granted a preliminary injunction, but the Court of Appeals stayed the injunction. (#15 and #29). That court deferred full consideration of the merits of the constitutional and statutory challenges and set the case for oral argument. While the appeal was pending, the Texas Legislature amended the statute. After hearing oral arguments, the Court of Appeals remanded the case to this court for further consideration in light of the amendments.

Prior to trial, the parties settled their disputes except for those related to one provision of the Texas Election Code. The challenged provision relates to the process by which a putative early voter applies for an application and specifically the need to have a witness for the application if a person is unable to sign his or her own application. § 84.004 of the Texas Election Code provides as follows:

> (a) A person commits an offense if, in the same election, the person signs an early voting ballot application as a witness for more than one applicant.
>
> (b) It is an exception to the application of Subsection (a) that the person signed early voting ballot applications for more than one applicant:
>
>> (1) as an early voting clerk or deputy early voting clerk; or
>> (2) and the person is related to the additional applicants as a parent, grandparent, spouse, child, or sibling.
>
> (c) A violation of this section does not affect the validity of an application involved in the offense.
>
> (d) Each application signed by the witness in violation of this section constitutes a separate offense.
>
> (e) An offense under this section is a Class B misdemeanor

Texas Election Code § 84.004.

To resolve the dispute, the court asked the parties to submit motions for summary judgment directed toward these claims. The plaintiffs' brief limits their challenges to § 84.004 to those under the First and Fourteenth Amendments to the Constitution and Section 208 of the Voting Rights Act ("Section 208"). The plaintiffs contend that § 84.004 has had a chilling effect on Democratic Party activists who have assisted mail-in voters in the past, but have stopped due to their fear of prosecution and/or confusion concerning the statute's scope. In turn, this lack of assistance has resulted in the disenfranchisement of elderly and disabled voters. The State argues that § 84.004 combats election fraud and is reasonably tailored in scope. In response, the plaintiffs note that other laws–that are not as oppressive as § 84.004–exist to fight election fraud.

The evidence in support of the plaintiffs' claims includes testimony concerning the impact § 84.004 has had, and will have, on voters and those who assist voters. For example, Willie Ray notes that she has been unable to serve as a witness to multiple voters who have asked for her assistance because of § 84.004. Ms. Ray suggests that if she (or someone similarly situated) is unable to witness a signature for an application, the applicant likely will not seek further assistance and will not vote. *See* Decl. of Ray at ¶¶ 3-7. Plaintiff Ken Bailey makes similar statements in his declaration. *See* Decl. of Bailey at ¶¶ 7-10.

The record includes more concrete examples of the impact of § 84.004: Plaintiff Minniweather was interviewed by an investigator from the Attorney General's office in relation to assistance she provided for mail-in voters. The State did not pursue the criminal prosecution, but Minniweather stopped assisting with mail-in voting as a result of the investigation. The State also investigated Plaintiff Meeks in connection with assisting mail-in voters, but there is no indication that she stopped assisting voters as a result.

There is also evidence in the record that § 84.004 has not impacted voters and those who assist voters to the degree suggested by the plaintiffs. For example, Plaintiff Jackson is a Democratic Party activist who has assisted elderly and disabled voters in the past and apparently wants to do so in the future, notwithstanding § 84.004. Plaintiff Robinson is a voter who is elderly and disabled. He claims to need help with voting, but he voted in person in the 2008 Democratic primary election. For purposes of this opinion, the court has accepted the plaintiffs' evidence as true, and viewed it in the light most favorable to their claims.

**3.   Discussion**

"Voting is of the most fundamental significance under our constitutional structure." *Illinois Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979); *see also Burdick v. Takashi*, 504 U.S. 428 (1992). However, the right to vote and the right to associate for political purposes are not absolute. *See Munro v. Socialist Workers Party*, 479 U.S. 189, 193 (1986). The Constitution allows the states to regulate the time, places, and manner of holding elections for members of congress. *See Sugarman v. Dougall*, 413 U.S. 634, 647 (1973). "Common sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections; 'as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process.'" *Burdick*, 504 U.S. at 433 (citing *Storer v. Brown*, 415 U.S. 724, 730 (1974)).

Election laws "will invariably impose some burden upon individual voters." *Burdick*, 504 US. at 433. "[T]he mere fact that a State's system 'creates barriers . . . tending to limit the field of candidates from which voters might choose . . . does not of itself compel close scrutiny.'" *Id*. (citing *Bullock v. Carter*, 405 U.S. 134, 143 (1972); *McDonald v. Board of Election Comm'rs fo Chicago*,

394 U.S. 802 (1969)).

When the First and Fourteenth Amendment rights are "severely" restricted, the regulation must be "narrowly drawn to advance a state interest." *Norman v. Reed*, 502 U.S. 279, 289 (1992). "But when a state election law provision imposes only 'reasonable, non-discriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, the State's important regulatory interests are generally sufficient to justify the restrictions." *Burdick* 504 U.S. at 434. In *Burdick*, the Court applied this standard when upholding the constitutionality of Hawaii's ban on write-in ballots. *See id*.

Recently, in *Crawford v. Marion County*, the court upheld a facial challenge to an Indiana statute requiring photo identification. *See Crawford v. Marion County*, 128 S. Ct. 1610 (2008). The Court found that the state's interest in preventing election fraud sufficiently justified the degree to which the Indiana statute infringed the voters' right to vote. *See id.* Moreover, the Court noted that the statute impacted segments of the population differently. Specifically, the Court remarked that "[t]he need to travel to a BMV branch will affect voters according to their circumstances . . . Poor, old, and disabled voters may find the trip prohibitive . . . " *Id.* at 1628-1629. Additionally, the Court commented that the "burden of traveling to a more distant BMV office rather than a conveniently located polling place is probably serious for many of the individuals who lack photo identification." *Id.* at 1630. The Court further remarked that voters who lack photo identification likely will not own cars, that public transportation in Indiana is limited, and that increased travel costs likely reduce voter turnout." *See id.* Despite the disproportionate impact, the petitioners had advanced a broad attack on the constitutionality of the Indiana law, seeking relief that would invalidate the statute in all of its applications. As such, they bore a heavy burden of persuasion. *Crawford*, 128 S. Ct. 1610,

1621.

Indiana argued, *inter alia*, that the state's interest in preventing election fraud justified the photo identification law.  The record, however, contained no evidence of in-person impersonation actually occurring, and the petitioners argued that "provisions of the Indiana Criminal Code punishing such conduct as a felony provide adequate protection against the risk that such conduct will occur in the future." *Id.* at 1619.  Nevertheless, the Court stated that "flagrant examples of such fraud in other parts of the country have been documented throughout this Nation's history by respected historians and journalists . . ." *Id.*  The Court further noted that "[t]here is no question about the legitimacy or importance of the State's interest in counting only the votes of eligible voters . . . While the most effective method of preventing election fraud may well be debatable, the propriety of doing so is perfectly clear." *Id.* at 1619.

Having determined that the state interest in combating election fraud was significant, the Court attempted to assess the extent to which the photo identification law burdened the rights of voters.  The record did not demonstrate the number of registered voters who lacked photo identification. *Id.* at 1622.  Additionally, the Court noted that the evidence did not provide any "concrete evidence of the burden imposed on voters who currently lack voter identification." *Id*.  The record did include depositions of two case managers at a day shelter for homeless persons and the depositions of members of the plaintiff organizations.  But none of these persons expressed an inability to vote under SEA 483. *Id.*  Moreover, although one elderly plaintiff had unsuccessfully attempted to obtain a birth certificate from Tennessee, and another testified that he did not know how to obtain a birth certificate from North Carolina, the Court concluded that it could not find that the statute imposed excessively burdensome requirements on any class of voters.  The Court declared

that a "facial challenge must fail where the statute has a 'plainly legitimate sweep.'" *Id.* at 1623 (citing *Washington State Grange v. Washington State Republican Party,* 128 S.Ct. 1184, 1190(2008))

*Crawford* is important because it recognizes the state's interest in regulating elections to prevent voting fraud. It is also important because the Court requires specific proof of how a burden imposed by a regulation actually impacts a given class of voters. Bearing these points in mind, the court now assesses the constitutionality of the Texas statute.

In this case, it must be accepted that the Texas Legislature has imposed a lesser burden on the voter than Indiana did in its photo identification law. The state law at issue in this case restricts the right of a voter to have the witness of choice witness the voter's signature on an early voting ballot *application.* The law has nothing to do with in-person voting on election day. It is well-settled that voting by absentee ballot is not a fundamental right requiring strict scrutiny analysis. *See McDonald v. Board of Com'rs of Chicago*, 394 S. Ct. 1404 (1969).

The State argues that § 84.004 is justified by the State's interest in preventing election fraud–the same justification advanced in *Crawford*. Specifically, the State argues that the statute was intended to prevent elderly and disabled individuals from being unwitting victims of voting fraud perpetuated through the use of fraudulent absentee ballot applications. This interest is certainly important and recognized by the Supreme Court. "[T]here is no question about the legitimacy or importance of the State's interest in counting only the eligible voters." *Crawford,* 128 S.Ct. 1610, 1619. This court accepts the State's representation that § 84.004 is intended to combat election fraud

but does so with reservation.[2] The legislative history includes testimony that individuals fraudulently obtained absentee ballots for nursing home residents and testimony of complaints about fraudulent applications for absentee ballots. *See* Exs. 23 and 25 to State's Motion for Summary Judgment. Accordingly, it appears that § 84.004 was enacted at least in part to combat election fraud.

The present plaintiffs focus on the effect of § 84.004 on elderly and disabled voters. The plaintiffs offer their deposition testimony which includes logical deductions that § 84.004 has the effect of decreasing the numbers of volunteers willing to assist with the early voting ballot application. The record as a whole is similar to *Crawford* because it does not include concrete evidence that the statute has "had a chilling effect" on voting by elderly or disabled voters. With one exception, the plaintiffs admit that they will continue to provide assistance to voters. The court appreciates the logical conclusion that precluding volunteers from witnessing more than one ballot application could reduce voter participation to some extent. However, the record lacks concrete evidence that § 84.004 has had an appreciable impact on elderly and disabled voter participation. On this record, the court cannot conclude that § 84.004 has had a "chilling effect" on voters or that § 84.004 has "disenfranchised" the voting public to any appreciable extent.

The State may impose reasonable non-discriminatory restrictions on a person's right to vote. Section 84.004 reasonably and non-discriminatorily restricts the number of applications for early balloting a person may witness. In view of *Crawford*, the court cannot find that § 84.004 is unconstitutional either because it infringes one's right to vote or because it is overbroad.. The

---

[2] The State's claim is somewhat dubious because § 84.004 limits the number of signatures on *applications* for early balloting a person may witness, but does not limit the number of signatures on *actual ballots* a person may witness. This inconsistency casts doubt on the State's claim that § 84.004 is intended to combat election fraud.

defendants are therefore entitled to summary judgment on plaintiffs' constitutional challenges.

The plaintiffs also contend that § 84.004 conflicts with, and is therefore preempted by, Section 208 of the Voting Rights Act.  The language of Section 208 is as follows:

> Any voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or office or agent of the voter's union.

42 U.S.C. § 1973aa-6.

The plaintiffs contend that the restriction on the number of early ballot applications a person may witness conflicts with the Voting Rights Act in circumstances where a voter seeks assistance from a person who has already witnessed one ballot application.  As a result, the plaintiffs ask the court to find § 84.004 preempted by the Voting Rights Act.

The State argues that Section 208 applies only to in-person voting, not absentee balloting. The State also argues that the Legislature reasonably may restrict the field of persons from which a disabled voter may seek assistance, so long as the voter retains the right to select a person of his or her choice for help.  The plaintiffs' position is that Section 208 entitles the voter to use his or her witness of choice without restriction.

First, the court rejects the State's argument that Section 208 does not apply to early voting. Even though the legislative history focuses on election day assistance at the polls, the statutory definition of "voting" is broad enough to include early voting.  The relevant provision defines "voting" as follows:

> . . . all action necessary to make a vote effective in any primary, special, or general election, including but not limited to, registration, listing pursuant to this subchapter, or other action required by law prerequisite to voting, casting a ballot, and having such ballot counted properly and included in the

>appropriate totals of votes cast with respect to candidates for public or party office and propositions for which votes are received in an election.

42 U.S.C. § 1973(I)(c). The broad definition of "voting" in the statute clearly encompasses voting by absentee ballot.

The next issue is whether § 84.004 conflicts with the Voting Rights Act. The State's argument appears to concede that if § 84.004 conflicts with Section 208, then Section 208 preempts § 84.004. The language in Section 208 at issue in this case is:

>Any voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by ***a person of the voter's choice***, other than the voter's employer or agent of that employer or office or agent of the voter's union.

42 U.S.C. § 1973aa-6 (emphasis added)

The plaintiffs ask the court to construe "a person of the voter's choice" to mean that the voter may choose *any* person, without limitation. For example, under the plaintiffs' proposed construction, the State would be forced to honor the voter's choice to have an incarcerated family member witness his or her application for an early voting ballot. The State's position is that Section 208 empowers the voter to choose the person who will assist him or her, but the voter is not entitled to his or her preferred choice if that choice is reasonably restricted by the state. In the State's view, the protection afforded the voter by Section 208 is simply that the voter is not required to accept another person's choice.

The Supreme Court allows the states to regulate elections, provided that those restrictions are reasonable and non-discriminatory. In situations where Congress has not clearly manifested a contrary intent, this court defers to the decision of the elected representatives of the state, provided the challenged regulation does not unduly burden the right to vote. The language of Section 208

allows the voter to choose a person who will assist the voter, but it does not grant the voter the right to make that choice without limitation. In this vein, the legislative history supports the court's construction of the language of the statute: "[T]he committee has concluded that the only kind of assistance that will make fully 'meaning' the vote of the blind, disabled, or those who are unable to read or write is to permit them to bring into the voting booth a person whom the voter trusts and who cannot intimidate him." S. Rep. 97-417, 1982 U.S.C.C.A.N. 177. The legislative history evidences an intent to allow the voter to choose *a* person whom the voter trusts to provide assistance. It does not preclude all efforts by the State to regulate elections by limiting the available choices to certain individuals.

The court's holding in this regard is consistent with the only case law the court has found directly addressing this question. In *Qualkinbush v. Skubisz*, the Appellate Court of Illinois addressed a statute limiting who may return an absentee ballot. *See Qualkinbush v. Skubisz,* 357 Ill. App. 3d 594 (App. Ct. Ill. 2004). That case addressed a local election and assumed that the Voting Right Act applied to local elections. The *Qualkinbush* court found that an Illinois statute limiting the persons eligible to return an absentee ballot did not conflict with the Voting Rights Act. *See id.* at 611; *see also DiPietrae v. City of Philadelphia,* 666 A.2d 1132, 1133 (Pa. Commw. Ct. 1995)(upholding a Pennsylvania statute limiting the persons for whom individuals may act as agents to obtain absentee ballot applications, deliver absentee ballot applications, obtain absentee ballots, or deliver completed absentee ballots).

In these cases, the courts suggested that the State retains some latitude to restrict the field of persons who may assist with the delivery of absentee ballots, notwithstanding the provisions of the Voting Rights Act. The restriction imposed by the present statute is similar to the limitations at issue

in *DiPietre* and *Qualkinbush*.  This restriction is reasonable in view of the State's goal of reducing the type of election fraud addressed by § 84.004.  The statute is not preempted by Section 208.

**4.     Conclusion**

The court denies the plaintiffs' motion for summary judgment and grants the defendants' motion to the extent necessary to deny all of the plaintiffs' claims for relief.  The challenged restriction is not contrary to the First or Fourteenth Amendments and is not preempted by the Voting Rights Act.

SIGNED this  7th  day of August, 2008.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE